J. Irwin Shapiro, J.
This is a motion by the defendant ‘ ‘ for an Order dismissing the Second, Third and Sixth canses of action alleged in the Complaint, pursuant to CPLR 3211 (a) (7) on the grounds that said alleged Second, Third and Sixth causes of action in the Complaint fail to state facts sufficient to constitute a cause of action”.
The infant plaintiff in this case was injured by a vehicle owned and operated by defendant’s assured and thereafter recovered a judgment on his cause of action for personal injuries. His father, the other plaintiff in this case, also recovered a judgment for his loss of services. Both judgments remain unsatisfied. The judgments are in excess of the face amount of the insurance policy. Cause of action Ho. 2 is by the infant plaintiff to recover from the defendant the full amount of his judgment on the ground that the defendant, by reason of its tortious conduct and its breach of the terms of its insurance agreement with its assured, failed to settle the infant’s personal injury action at an amount less than the coverage provided for in the insured’s policy even though the infant plaintiff was willing to accept such a sum. Causes of action Hos. 3 and 6 are to recover punitive and exemplary damages arising out of the afore-mentioned canse of action.[1] For the purposes of this opinion, only cause of action Ho. 2 will be considered, for the determination thereof will be dispositive of the entire motion.
In essence, the second cause of action alleges that the defendant exercised bad faith and was guilty of negligence in its preparation, investigation and handling of the personal injury litigation; that the defendant considered its own interests in handling the litigation to the exclusion of the interests of its assured, and wrongfully breached the terms of the policy of insurance issued by it to its assured by failing to settle the action although it could have done so within the policy limits; and that it breached its duty toward the plaintiff as a quasi-trustee for him, since it was an insurance carrier licensed to do business in this State.
I have been unable to find any case Avhich four-square sustains a cause of action such as is here alleged. In Atlantic City v. *612 American Cas. Ins. Co. (254 F. Supp. 396), the complaint alleged that a liability insurance policy existed between the defendant, the insurer, and Atlantic City, the insured, with policy limits of $100,000. The complaint further alleged that Atlantic City had made repeated demands upon the insurer to negotiate settlement of the suit within the limits of the policy but that it refused to do so in good faith and thereby breached its duty to the insured. The plaintiffs in that action were both the plaintiff in the original personal injury action and Atlantic City, the insured. Upon the trial in the personal injury action, the plaintiff recovered a judgment for $600,000 but the insurance policy limits were $100,000, as aforesaid. Prior to the personal injury trial, the injured party and Atlantic City, the insured, requested the insurer to settle the lawsuit for $350,000 (p. 397) “ of which the policy limit ” of $100,000 “ was to be contributed voluntarily, by the Insurer ” and $250,000 by the insured. The defendant insurance company rejected the proposal of settlement. Thereupon Atlantic City entered into an agreement with the injured plaintiff ‘ ‘ whereby the City settled its liability with him for $250,000.00, and in consideration therefor partially assigned to him a share in any cause of action it might have against the Insurer to recover the excess of any judgment over the policy limits.”
The insurer moved to dismiss the complaint of Caporossi, the injured plaintiff who had recovered the judgment in the personal injury action. In making its motion, the defendant insurance company alleged (p. 398) “that the complaint alleges no contractual rights with, or duty owed to, Caporossi which were breached, nor any damages proximately resulting from any such breach.” In opposing the motion to dismiss, Caporossi claimed to be a proper party “asa judgment creditor of the Insured, as well as a ‘ real party in interest ’ by virtue of his status as an assignee of the Insured. ’ ’
It is apparent from the recitation of the facts as above set forth, that the cause of action could properly have been sustained simply on the theory that by virtue of the assignment to him, Caporossi was a proper party plaintiff. Some of the language, however, is consistent with a holding that Caporossi could have maintained a cause of action against the insurance company to recover the excess over the policy limits, even in the absence of an assignment, upon the ground that the policy was issued by the insurance company pursuant to rights granted to it by statute; that therefore its issuance was not wholly a private matter between the insurer and the insured; and that by reason of such facts, ‘ * upon the happening of an accident *613 the injured third party acquires an interest in the policy that cannot be foreclosed by litigation or agreement between insurer and insured alone.” (Matter of Gardinier, 40 N. J. 261, 265.)
The United States District Judge also said (p. 398): “ Thus, Caporossi having such an interest arising under the policy can independently seek redress against the Insurer for its alleged breach of the terms of such policy where the Insurer fails to exercise good faith in an effort to negotiate a settlement within the policy limits.” (Emphasis supplied.) In thus holding, the court sought to distinguish Chittick v. State Farm Mut. Automobile Ins. Co. (170 F. Supp. 276), which held that a judgment creditor of an assured had no standing to sue the insurer directly for an amount in excess of the insurance coverage, on the ground that since in that case the insured was not joined in the action (p. 399) “ there would be no basis for determining the question of excess in the assured’s absence from the suit, he not being a party thereto. ” It is not necessary' for present purposes to determine whether the distinction thus made is sound, for I hold that in New York there is no right of recovery by an injured plaintiff in a direct action against an insurance company for an amount in excess of the insured’s policy, regardless of whether the insurance company acted negligently or in bad faith or fraudulently in failing to settle the personal injury litigation in advance of trial.
In Auerbach v. Maryland Cas. Co. (236 N. Y. 247), in an action by an insured to recover the difference in the amount it was forced to pay and the amount it would have paid had settlement been effected by the insurance company, the complaint was held insufficient. There the plaintiff, the insured, alleged in his complaint that the case could have been settled for $6,500; that the insurance company was advised of that fact; that it agreed that the $6,500 was a fair settlement figure but that it refused to pay more than $3,500 toward the setttlement even though its policy was in the sum of $5,000. The complaint further alleged that the insured had offered to pay $1,500 toward the $6,500 settlement, but insisted that the insurance company should pay the full amount of its liability under the policy, to wit, the sum of $5,000, and that the insurance company declined to do so and insisted upon a trial. The complaint further alleged that both actions were tried and that a verdict was rendered in favor of the injured plaintiff for $20,000 and in favor of her husband in the sum of $500 and that the insurance company thereafter paid the face amount of its liability under the insurance policy and that the plaintiffs were compelled to pay the difference.
*614 Special Term dismissed the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The Appellate Division reversed Special Term, but the Court of Appeals said: ‘ ‘ The judgment of the Appellate Division must be reversed and that of the Special Term affirmed” because “ The complaint does not state a cause of action.” Said the Court of Appeals (pp. 252-253) ¡
“ There is nothing in the policy by which the insurance company obligated itself to settle, if an opportunity presented itself. It was given the option to settle, if it saw fit to do so, or to try the action, as it prefererd. It, however, was under no legal obligation, either express or implied, to compromise or settle the claims prior to the trial. The plaintiffs, when they accepted the policy, did so with full knowledge of the fact, if an action were brought, that they surrendered to the insurance company absolute, full and complete control of it, including the settlement or trial. [Citing cases.] They also kneAV there avus no provision in the policy Avhich obligated the insurance company to pay any amount Avhatever prior to the rendition of a judgment. * * *
' ‘ It is true the insurance company realized, prior to the trial, that the terms under Avhich a settlement could be had were favorable ones and that the same ought to he accepted. It so advised the plaintiffs in writing. The advice thus given imposed upon it no legal obligation to make the settlement. It knew that its liability was limited to $5,000, and while it offered to pay $3,500 towards a settlement, that did not impose upon it the obligation to pay the full amount of the policy prior to the trial. The probability that judgment much larger than $0,500 would he recovered was as well known to the plaintiffs as to the insurance company. íüach of the parties had full knowledge of all the facts. It is not suggested that the plaintiffs were misled by reason of the suppression of any of the facts by the insurance company or any fraud practiced upon them by it. * * *
1 ‘ The insurance company, in refusing to settle the actions, did what it had the legal right to do under the terms of the policy.
In Streat Coat Co. v. Frankfort Gen. Ins. Co. (237 N. Y. 60, 67-68), the court Said:
“ Defendant, however, was privileged at its own cost to settle any claim or suit. It was not obliged so to do, neither was it required to consult plaintiff in regard thereto. * * * In the absence of fraud, negligence or had faith, alleged and established it is not the duty of the court to read into contracts *615 conditions or limitations which the parties have not assumed. Negligent acts on the part of the defendant to the injury of plaintiff are not charged in the complaint ”.
In discussing its holdings in both Auerbach and Streat (supra), the court, in Best Bldg. Co. v. Employers’ Liab. Assur. Corp. (247 N. Y. 451, 454),[2] said that in neither of those eases was the insurance company charged with negligence either in investigating the accident or in its efforts to settle the claim and that “thus, these two eases seem to have reserved this question of negligence in failing to settle the claim. ”
Disagreeing with the holding by the Supreme Court of New Hampshire in Douglas v. United States Fid. & Guar. Co. (81 N. H. 371) that a recovery may be had for a negligent failure to settle, despite “ much force in the reasoning of this opinion ”, Judge Crane, writing for a unanimous court in Best, said (pp 455-456):
‘' yet I am inclined to the belief that the contract of the parties must measure the liability in the absence of fraud or bad faith. There are circumstances when implied obligations may be reasonably inferred from the language used (Brassil v. Maryland Casualty Co., 210 N. Y. 235), but there is no implied obligation in the insurance policy in this case that the company must or will settle according to the offer made. In the Auerbach case we said: ‘ There is nothing in the policy by which the insurance company obligated itself to settle, if an opportunity presented itself. It was given the option to settle, if it saw fit to do so, or to try the action, as it preferred. It, however, was under no legal obligation, either express or implied, to compromise or settle the claims prior to the trial. * * * The insurance company, in refusing to settle the actions, did what it had the legal right to do under the terms of the policy. ’
“We may ask what would constitute negligence in the failure to settle a case, as distinguished from bad faith. Even when there was little likelihood of recovery, many reasonable persons would think it wise to settle rather than to take any chance with a jury. In most of the accident cases, disputed questions of fact arise. Is the insurance company to determine at its peril whether reasonable-minded men would believe the plaintiff’s witnesses in preference to its own? Again, even on conceded facts, as frequently happens, a serious question of law arises as to the nature or extent of liability, if any. Is a jury to say that the insurance company was guilty of negligence in choos *616 ing to try out such a question in the courts rather than to settle? These questions suggest the wisdom of adhering to the contract of insurance which the parties have made. If the insurance company is to be obligated to make a settlement under any given circumstances, it must be a matter to be dealt with between the insured and the insurer, or else regulated by the Legislature.
‘ ‘ Although this court wrote no opinion in the case of Schencke Piano Company v. Philadelphia Casualty Company (216 N. Y. 662), it apparently decided that there was no liability for negligence in failing to settle a claim under an accident policy. In that case a judgment in the accident case was recovered for $10,143.93. The case could have been settled for $2,500. The company refused to settle because the insured would not pay part of the amount. Thereafter, the insured sued the company for the amount which it was obliged to pay over $5,000, the face of the policy. The complaint alleged negligence in these words: ‘ That the defendant herein refused and neglected to settle said action, and for its own benefit and against the wishes of the plaintiff herein arbitrarily and unreasonably refused to settle said claim and suit within the policy limit stated in said policy. ’
“ Our note in the memorandum recital of our decision calls attention to this complaint as alleging negligence and lack of due diligence. As a verdict was directed against the plaintiffs’ contention of negligence, this court must have decided the point. ”
In referring to these New York cases, the court, in Brown v. United States Fid. S Guar. Co. (314 F. 2d 675, 678 [C. A. 2d, 1963]) said: “It is unrealistic to assume * * * that the New York courts today would adhere to the position apparently espoused in the early cases, that the company is not bound to consult the interests of the insured at all in the event of a conflict. It is most likely that those courts, in implementing the good-faith settlement standard, would conclude that the interests of the assured must be given at least equal consideration in evaluating the propriety of a settlement. ”
Despite that assumption in the Brown case, the court, in Brochstein v. Nationwide Mut. Ins. Co. (266 F. Supp. 223, [U. S. Dist. Ct. E. D., N. Y. 1967]), which was required to pass on the New York law on the subject, held that an action based on an allegation of bad faith could not be predicated on the insurer’s wholly self-interested refusal to settle within the policy limits. Said the court in Brochstein (p. 224) “ Since there was neither a breach of contract nor other wrong on the *617 defendant insurer’s part, it is concluded that the action must be dismissed on the merits. * * * [p. 226]: It is not possible in light of the cases to accept that New York law conforms to Professor Keeton’s touchstone, that ‘ the insurance company must in good faith view the situation as it would if there were no policy limit applicable to the claim. ’ ”
Whether the Court of Appeals would presently hold that the line between what is negligence, where it has heretofore held that there can be no recovery, and bad faith, where there can be a recovery, is so tenuous and artificial that the distinction should no longer be continued, it is not necessary now to forecast[3], for, in the posture of this case, the plaintiff is not one who had any contractual relationship with the defendant insurance company. He, as the injured party who has recovered a judgment, is seeking to predicate his second cause of action on the alleged bad faith, negligence or fraudulent conduct of the insurance company. He has no such cause of action for, casting aside all other questions, he could have sustained no damage by reason of the conduct of the insurance company. If it had settled with him, within the policy limits, he would have received less than the amount of his judgment. He is therefore not a person aggrieved by any improper conduct on the part of the defendant insurance company. (Cf. Reno v. Bull, 226 N. Y. 546, 553; Abell v. Cornwall Ind. Corp., 241 N. Y. 327, 335.) Given the relationship of the parties here, the only recourse which a personal injury judgment creditor has against an insurance company must be predicated on section 167 of the Insurance Law. The causes of action in this complaint based upon that section are not under attack on this motion.
Except as section 167 of the Insurance Law gives the judgment creditor a right of action, he is not a third-party beneficiary of the contract of insurance obtained by the insured. (Cf. Lawrence v. Fox, 20 N. Y. 268; Todd v. Weber, 95 N. Y. *618 181; Smyth v. City of New York, 203 N. Y. 106; Seaver v. Ransom, 224 N. Y. 233; see, also, “An Insurance Company’s Duty to Settle, Qualified or Absolute?”, 41 So. Cal. L. Rev., [Fall 1967 ed.], and “ Insurer’s Excess Liability For Failure To Settle — Applicability in New York ”, 28 Albany L. Rev. 231 [1964].)
For the reasons above set forth, the second cause of action alleged in the complaint is held insufficient. Since the punitive causes of action (the third and sixth) depend for their efficacy on the sufficiency of the second cause of action, they, too, must fail. In any event, it should be noted that a claim for punitive damages is not a separate cause of action; it merely constitutes an element of the single total claim for damages. (Knibhs v. Wagner, 14 A D 2d 987; Gill v. Montgomery Ward & Co., 284 App. Div. 36, 41.)
The second, third and sixth causes of action are dismissed.

. The other causes of action are brought under the provisions of section 167 of the Insurance Lato by reason of the defendant’s refusal to pay that portion of the recovery which is within its policy limits.

. Strange as it may seem, the 1928 decision of the Court of Appeals in Best is the latest ease in that court dealing with this subject matter.

. In Brown v. United States Fid. dt Guar. Co. (314 F. 2d 675, 677 supra), the court said: “Perhaps the one conclusion upon which almost all authorities agree is that the distinction between negligence and bad faith in these insurance-settlement cases is more difficult to trace than most legal distinctions.” See, also, ann. 40 ALR 2d 171; 7A Appleman, Insurance Law and Practice, p. 562; and Keeton Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136, 1140, in which the point is made that the terms negligence and bad faith are to some extent interchangeable and that in actual practice the courts have tended to coalesce them. See, also, Crisci v. Security Ins. Co. (66 Cal. 2d 425, 430), in which the California Supreme Court went one step further and indicated that it might adopt an absolute liability standard, i.e., “ whenever an insurer receives an offer to settle within the policy limits and rejects it, the insurer should be liable in every case for the amount of any final judgment whether or not within the policy limits.”