## AMERICAN CASUALTY COMPANY *v.* JOSEPH PURCELLA ET AL.

[No. 42, October Term, 1932.]

*Decided January 17th, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*Walter C. Capper,* for the appellant.

*Taylor Morrison,* with whom was *Edward J. Ryan* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

Joseph Purcella and Frank Sicola each brought a suit against Mike Martirano, and each recovered a judgment for injuries respectively sustained by them while riding as guests in Martirano's automobile. Writs of *fi. fa.* were issued on both judgments and returned *"nulla bona."* Martirano had a liability insurance policy with the American Casualty Company, appellant, and after the return of the writs of *fi. fa.*, the appellees brought suits against the insurance company and recovered judgments against it for the amounts which they had obtained against Martirano. By agreement the cases were tried together, before the court sitting as a jury, and from judgments in favor of the plaintiffs, the defendant-appellant appeals. There is one exception, and that is to the refusal of the appellees' two prayers for directed verdicts, the first on the ground of no legally sufficient evidence, the second "that the insured (Martirano) failed to give immediate notice to the defendant (insurer) of the accident in question."

The provision of the policy requiring notice to be given is: "XI. Reporting accidents and claims. The assured, upon the occurrence of any accident covered hereby, shall give immediate notice thereof, together with the fullest information respecting it then obtainable. He shall give like notice, with full particulars, of any claim growing out of such accident, and the assured shall forward to the company every summons or other process as soon as it shall have been served upon him."

The policy of insurance sued on was sold and issued to Mike Martirano by Metzger & Holben, insurance agents, by whom the same was "countersigned at Frostburg, Md., on the 25th day of February, 1929," to be effective to February 25th, 1930, "against loss from the liability imposed by law upon the assured, for damages" to persons or property to the extent provided "by reason of the ownership, maintenance or use for the purpose named in the warranties" of the automobile described in the policy.

On November 10th, 1929, the assured, Mike Martirano, who resided at Eckhart Mines in Allegany County, had two

of his friends, Joseph Purcella and Frank Sicola, out driving. At Morantown, about two miles from Eckhart Mines, the car ran off the road into a telephone pole, slightly injuring Martirano, and more seriously injuring his guests. Martirano said he went to Frostburg a couple of days later and notified C. A. Holben, of the firm of Metzger & Holben, of the accident. The appellant denies that any such notice was given or, conceding that it was, it did not, according to the testimony of Martirano, impart "the fullest information respecting the accident then obtainable," and contends that the first notice of any kind received by the company or its agents was when Martirano, on December 13th, 1929, went to the office of Metzger & Holben at Frostburg, and delivered to Mr. Holben a letter of Edward J. Ryan, attorney for Purcella and Sicola, dated December 11th, 1929, and copies of the summons and declarations in both cases against Martirano, all of which had been left with him by the sheriff of Allegany County. These papers were forwarded by Messrs. Metzger & Holben to the office of the appellant at Reading, Pennsylvania, and on December 28th, the company, by C. A. Glase, its adjuster, wrote Martirano that, because of his failure to comply with the requirements of section XI of the policy, it would not defend any action brought against him or pay any judgment, and returned the papers. The cases were uncontested and proceeded to judgments.

There is no question of construction of the policies here involved which has not been decided by this court. In this court, ever since the decision in *Washington Fire Ins. Co. v. Kelly,* 32 Md. 421, in the construction of contracts of insurance the same rule of construction has obtained as on other contracts, namely, that the intention of the parties, as gathered from the whole instrument, must prevail. *Westchester Fire Ins. Co. v. Weaver,* 70 Md. 536, 17 A. 401, 18 A. 1034; *Agricultural Ins. Co. v. Hamilton,* 82 Md. 88, 33 A. 429; *Frontier Mortgage Corp. v. Heft,* 146 Md. 1, 125 A. 772; *Brownstein v. N. Y. Life Ins. Co.,* 158 Md. 51, 148 A. 273. The appellant has referred us to the opinions of other courts wherein the clause here relied on has been construed and

applied, amongst which are *Woodmen's Accident Assn. v. Pratt,* 62 Neb. 673, 87 N. W. 546; *Chapin v. Ocean Accident & Guarantee Corp.,* 96 Neb. 213, 147 N. W. 465; *McCarthy v. Rendle,* 230 Mass. 35, 119 N. E. 188; and the dissenting opinion of Judge Cothran in *Ott v. American Fid. & Cas. Co.,* 161 S. C. 314, 159 S. E. 635, 637, in which the decisions in this country are pretty generally reviewed. It cites also the case of *New Jersey Fidelity & Plate Glass Ins. Co. v. Love* (C. C. A.), 43 Fed. (2nd) 82, 86, in which the first notice had been promptly given, but notice of suit had not. There the rule was stated generally that: "A compliance with the conditions of the contract within a reasonable time is necessary to fix liability. The condition is a material and important part of the contract and should not be deliberately set aside as of no moment." 33 *C. J.* 10; 36 *C. J.* 1100. It is not necessary here to review these cases, as they nearly all are predicated on the rules of construction prevailing in this court, as will appear from those to which we shall refer in this opinion.

In construing contracts of insurance, and particularly those conditions which must be observed by the respective parties to the contract, the courts make no distinction between fire, life, accident, and liability policies. In all of them the courts require evidence of substantial compliance on the part of the insured, or the one seeking indemnity, if the insured has failed to do what the policy provides.

In the case of *Rokes v. Amazon Ins. Co.,* 51 Md. 512, 519, it was said of the provision for immediate notice of a fire loss: "The policy requires that proofs of loss shall be furnished in writing immediately after the fire. Immediately as here used means within a reasonable time; and what is a reasonable time must of course depend upon the facts and circumstances of each particular case. *Cashau v. Ins. Co.,* 5 Biss. 476; *Edwards v. Ins. Co.,* 75 Pa. 378."

But we are not restricted in this case to experience in fire insurance cases as precedent or authority. Automobiles, with their resultant casualties, have brought to this court for construction a new kind of insurance policy which not only

gives protection to the policy holders, but to the victims of his carelessness, negligence, or lack of skill. Recently we had one between two insurance companies, one of which had paid for the damage done to its policyholder's automobile. It, in turn, sued the wrongdoer, obtained a judgment, and, on his failure to pay, sued his insurer. The wrongdoer's insurer resisted the claim on the ground that the insurer had, without its consent, admitted liability, contrary to a provision of his policy. In that case (*American Automobile Ins. Co. v. Fid. & Cas. Co.*, 159 Md. 631, 637, 152 A. 523, 525) the provision of the policy under review was not the one requiring notice, but another material clause, forbidding a voluntary admission of liability without the written consent of the company, and it was there said: "There can be no doubt that the violation of that condition contained in the policy is a breach of the contract," and among the cases cited was *Coleman v. New Amsterdam Casualty Co.*, 247 N. Y. 271, 160 N. E. 367, 369, on the co-operation clause of such a contract, in which the court said: "Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected." *Koontz v. General Casualty Co.*, 162 Wash. 77, 297 P. 1081.

In *Columbia Casualty Co. v. Ingram,* 154 Md. 360, 140 A. 601, the insurer contested a suit on a judgment of a third party against the insured, on the ground that it had not had "prompt written notice * * * with the fullest information obtainable at the time." The question there was whether there was legally sufficient evidence of a waiver of the provision by the subsequent participation of the insurance company in the litigation.

The policy in *Lewis v. Commercial Casualty Ins. Co.*, 142 Md. 472, 121 A. 259, provided: "Upon the occurrence of an accident or loss covered by this policy, the assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the company or its duly authorized agent. If a claim for damages is made upon the assured on account of such accident, the assured shall give like notice thereof with full particulars." The accident occurred No-

vember 13th, 1918, resulting in the death of the third party, Thomas Fitzpatrick, an employee of the Crane Company, on Jnauary 8th, 1919. Compensation had been awarded and paid by the Globe Indemnity Company, which brought suit against the insured. The case was settled, and the insured, Lewis, sought recovery against his insurer, appellee, which had declined to defend because it had not had notice of any kind until January 4th, 1919, four days before the death of Fitzpatrick, when insured and insurer both were informed that Fitzpatrick was about to die. The accident resulting in injury was not regarded at the time by the insured's employee or Fitzpatrick as serious, though the insured's employee, Joseph Lewis, informed his employer, Jack Lewis, insured, of the accident, on his return to Baltimore, a week or ten days later. The questions in that case were whether one or two notices were necessary, as in the instant case, and then whether there had been a compliance with the provision for notice "immediately" upon the happening of the accident, regardless of the subsequent claim. It was held that the insurer was not liable under its contract, because of the failure of the insured to give the "immediate written notice" required, and the notice of the claim of the Globe Indemnity Company, made by its attorney on January 4th, 1919, did not supply the omission.

In the *Lewis* case seven weeks intervened between the accident and the first notice to the insurer; in the instant case the appellant contends that it was five weeks. If the insurer's contention be correct, that its first notice was when the declarations and Mr. Ryan's letter were delivered, then the appellees would not be entitled to recover, for their rights depend upon compliance by Martirano with the terms of his contract with the appellant, there being no evidence of any reason or circumstances on account of which notice could not have been more promptly given. The appellees' cases therefore depend upon the legal sufficiency of the evidence of the "immediate notice" to the insured from Martirano, with "fullest information respecting" the accident "then obtainable."

It has been so often said in the opinions of this court that demurrer prayers assume the truth of the evidence adduced in support of the plaintiff's claim, and of every reasonable and rational inference to be drawn therefrom, that the citation of precedents would be superflous. We must therefore assume that two or three days after the accident Martirano did see Mr. Holben, the insured's agent, at Frostburg, Maryland, and that he did say what he testified to having said. His story as to the alleged first notice is not corroborated, and is flatly contradicted by Mr. Holben and his clerk, but, nevertheless, the demurrer prayers admit the truth of Martirano's story, and leave only for decision its legal sufficiency. Asked what happened, he said: "I went up town and told Mr. Holben I had a wreck and somebody got hurt. Q. How long after the accident? A. About two days after. Q. Did you tell him who it was got hurt? A. I told him Joe Purcella and Frank Sicola. Q. What did Mr. Holben say at that time? A. He says if anything happened—to go there and see and if anything would be worse to come to him again and he would fix it up. Q. Now then, who is Mr. Holben? What does he do? A. He is the insurance agent where I got the insurance policy for my car." On cross-examination he was asked: "Q. You said two days afterwards you were in Frostburg and told Mr. Holben about it? A. Yes, sir; I seen him on the street and told him. Q. Wasn't that at the same time you took the letter to him from Mr. Ryan? A. No, sir. Q. How long before that? A. It was after I got the accident. Q. Didn't he ask you why you didn't report the accident sooner, when you gave him this letter that you had received from Mr. Ryan? A. I did report it to him. Q. When you went to him with this letter from Mr. Ryan, which you have identified, dated December 11th, 1929, didn't he ask you why you hadn't reported it sooner? And didn't you say you didn't know these men were going to sue you? A. No, sir; he didn't say nothing. He just said he was going to take care of this case is what he told me."

These are the particulars of the accident, as testified to by Martirano, which the appellant vigorously contends was not

the "fullest information" of the accident "then obtainable," and that, assuming some verbal notice was given to Mr. Holben, it does not comply with paragraph XI of the policy.

Assuming that Martirano did omit some of the details of the accident, can the appellant complain? He testified that he personally told the agent from whom he bought the policy that he had had an accident and that Joe Purcella and Frank Sicola had been injured. The two days' delay, under the cricumstances, is not unreasonable. When asked if he had gone with the injured men to their homes, Martirano said: "No, sir; some one else took them because I was pretty bad hurt too."

The purpose of the preliminary notice and the requirement of promptness are to enable the insurer to make an investigation when the facts are obtainable. It is not pretended that the insurer will determine its course solely on the statement of the insured. Assuming that Martirano told the insurer's agent what has been testified to, and we must assume what the demurrer prayers admit, can the appellant now question the omission of any details, or has it waived any of the deficiencies of the alleged preliminary notice?

In *Edwards v. Balto. Fire Ins. Co.*, 3 Gill, 176, wherein the insurance company denied liability on the ground that the preliminary proofs of loss did not comply with the terms of the policy, it was said: "The principles upon which the waiver of preliminary proofs depend, are correctly stated in the case of *McMasters and Bruce v. Western (Westchester County) Mut. Ins. Co.*, 25 Wend. (N. Y.) 382, where the court says, 'the law is well settled, that if there be a formal defect in the preliminary proofs, which could have been supplied had an objection been made by the underwriters, to payment on that ground; if they do not call for a document, for instance, or make an objection on the ground of its absence or imperfection, but put their refusal upon other grounds, the production of such further preliminary proofs will be considered as waived.'" And, speaking of the interviews between the insured and the agents of the company, the court further says: "Had the objection been made in the

course of these interviews, the defects might at once have been remedied." In the instant case, the insured having personally advised the insurer's agent of the accident (there being no instructions in the policy as to the person to whom or the manner in which the notice should be given), with such facts as appear to have been testified to by him, if the agent did not request or demand more information than the insured then gave, if any information then obtainable was omitted, it was waived.

We, therefore, hold that there was legally sufficient evidence of compliance with the terms of the policy, and that the trial court was right when it refused the appellant's prayers for an instructed verdict.

*Judgments affirmed with costs.*