[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11623
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cv-61711-WJZ

GEMINI II LTD,

Plaintiff - Appellant,

versus

MESA UNDERWRITERS SPECIALTY INSURANCE CO.,

Defendant - Appellee,

R&L YACHT REFINISHING INC.,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 19, 2014)

Before WILLIAM PRYOR, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

This litigation arises out of an insurance coverage dispute governed by Florida law.  Gemini II LTD brought suit against R&L Yacht Refinishing Inc. alleging, breach of contract.  According to Gemini, R&L improperly applied a paint coating system to a vessel.  R&L failed to appear or defend, and Gemini obtained a $2.8 million default judgment against R&L.  Gemini, unable to collect from R&L, sued Mesa Underwriters Specialty Insurance Co.,[1] R&L's insurer, seeking damages and declaratory relief.  Mesa pled late notice as an affirmative defense, and both parties moved for summary judgment.  The district court granted summary judgment in favor of Mesa because Gemini failed to rebut the presumption that Mesa was prejudiced by late notice of Gemini's claim.  Gemini now appeals.  After review of the briefs and record, we affirm.

## I

The following facts are undisputed.

In 2005, Gemini contracted with Derecktor Shipyards Connecticut LLC to build a 145-foot catamaran.  Derecktor contracted with R&L to install an "Awlgrip" paint coating system on the vessel.  R&L, insured by Mesa under three commercial general liability policies, began work on the vessel in Connecticut in

---

[1] Mesa appears under its former name, Montpelier US Insurance Co., in portions of the record.

2007. In 2009, with construction ongoing, Gemini decided to move the vessel to England after learning that Derecktor was experiencing financial problems. R&L prepared the vessel for transport to England.

During the trans-Atlantic voyage, a piece of the Awlgrip paint coating became dislodged and fell off the vessel. Gemini alleged that shoddy workmanship on the part of R&L caused the coating to fail. From February to August of 2010, Gemini informed R&L—via letters and emails—that there was a problem with the Awlgrip coating. R&L did not respond to Gemini. As a result, Gemini contracted with a third-party to make the necessary repairs, and work on the vessel was completed in August of 2011.

In January of 2011, Gemini filed suit against R&L for breach of contract, breach of implied and express warranties, and negligence. R&L ignored the lawsuit, and in April of 2011, the district court entered default judgment against R&L for $2.8 million.

Gemini claims that it first learned about R&L's policies with Mesa during post-judgment discovery. In November of 2011—seven months after default judgment was entered against R&L and more than a year after Gemini complained to R&L about the coating—Gemini notified Mesa of its lawsuit and judgment against R&L.

3

On November 18, 2011, Mesa received a notice of claim from Gemini, in which Gemini asserted that it was seeking to recover an amount equal to the default judgment against R&L. This was the first time Mesa received notice of the underlying action against R&L and the occurrence that allegedly triggered the claim against the policies.

On November 21, 2011, Mesa sent R&L a reservation of rights letter acknowledging receipt of Gemini's notice of claim. That letter was also hand delivered to Ricky Nguyen, R&L's owner and president, on December 4, 2011. The letter explained that Mesa would investigate the claim to determine whether coverage existed. The letter also listed several policy terms and conditions, including one titled "Duties In The Event Of Occurrence, Offense, Claim Or Suit." According to that provision, R&L was required to notify Mesa of an "occurrence . . . which may result in a claim . . . as soon as practicable." The letter continued as follows:

> In citing the forms and endorsements above, and the terms and conditions of the policy, we do not waive any terms, conditions, or provisions of the policy. We have cited these to provide specific references to portions of the policy, without waiver of any part of the policy.
>
> The facts of this claim and the allegations made against you in the above complaint are too vague to determine at this time whether or not the claims being asserted will be covered by the provisions of the policy. The defense and investigation is being provided and conducted, subject to a full and complete reservation of rights, under the policy.

4

On December 22, 2011, Mesa sent R&L a letter denying the claim. The letter provided a number of reasons for the denial: (1) based on the complaint and investigation Mesa determined that there had been "no occurrence or property damage resulting from an occurrence during the policy period"; (2) R&L made no effort to notify Mesa of the lawsuit brought by Gemini; (3) the policy excluded coverage for "prior completed or abandoned work"; and (4) Mesa had been prejudiced by R&L's failure to meet the policy conditions. The denial letter also listed several policy terms and conditions—including the "duties in the event of an occurrence" provision—as well as the following reservations of rights:

> In citing the forms and endorsements above, and the terms and conditions of the policy, we do not waive any terms, conditions, or provisions of the policy. We have cited these to provide specific references to portions of the policy, without waiver of any part of the policy.

On March 8, 2012, Gemini filed suit against Mesa seeking declaratory relief and alleging a third-party beneficiary claim for breach of contract. Mesa pled late notice as an affirmative defense and moved for summary judgment. Gemini moved for partial summary judgment arguing in part that Mesa was precluded from raising the late notice defense because it did not suffer prejudice due to late notice. The district court granted summary judgment in favor of Mesa, and this appeal followed.

5

## II

Gemini makes two arguments on appeal.  First, it argues that summary judgment in favor of Mesa was improper because, although notice was untimely, it rebutted the presumption of prejudice as to Mesa.  Second, it argues that, although R&L received Mesa's reservation of rights letter within 30 days as provided by Fla. Stat. § 627.426(2)(a), Mesa waived the late notice defense because its reservation of rights letter did not specify that Mesa would rely on the late notice defense.  We address each argument in turn.

## A

Our review of a district court's grant of summary judgment is plenary. *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1301 (11th Cir. 2012).  "We will affirm if, after construing the evidence in the light most favorable to [Gemini], we find that no genuine issue of material fact exists and [Mesa] is entitled to judgment as a matter of law."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263-64 (11th Cir. 2010).

The purpose of a notice provision is to allow an insurer to "evaluate its rights and liabilities, [and] to afford it an opportunity to make a timely investigation."  *Laster v. U.S. Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA

6

1974).  Under Florida law, "[t]he failure of an insured to give a timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy." *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981).  Where, as here, an insured breaches a policy's notice provision, "prejudice to the insurer [is] presumed, but may be rebutted by a showing that the insurer [was] not [ ] prejudiced by the lack of notice." *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985).  *See also H. S. Equities, Inc. v. Hartford Acc. & Indem. Co.*, 334 So. 2d 573, 575 (Fla. 1976) ("Under Florida law late notice is not a defense if the insured can establish that the insurer was not prejudiced thereby.").  Under Florida law, "the burden [is on] the insured or the third-party beneficiary to prove the lack of prejudice." *United States v. United Bonding Ins. Co.*, 422 F.2d 277, 280 (5th Cir. 1970).  *See also Deese v. Hartford Acc. & Indem. Co.*, 205 So. 2d 328, 332 (Fla. 1st DCA 1967) ("[W]hen the issue of prejudice is properly injected into the case, the burden rests upon the one seeking to impose liability to show that no prejudice did, in fact, occur.").

Gemini concedes that notice to Mesa was untimely.  In fact, as the district court correctly pointed out, it is undisputed that R&L *never* provided Mesa with notice of the occurrence or claim that allegedly triggered coverage, the initial suit brought by Gemini against R&L, or the default judgment entered against R&L. Gemini also acknowledges that Mesa is presumed to have been prejudiced because

7

notice was untimely.  Gemini argues, however, that it rebutted the presumption, and therefore, created a genuine issue of fact precluding summary judgment in favor of Mesa.  We disagree.

Mesa presented evidence that it had been prejudiced by late notice.  Leo Leonard, Mesa's corporate representative, averred that, had Mesa been given timely notice it could have (1) retained an expert to determine whether the paint coating had been improperly applied, what caused the improper application, and the amount of damage caused by the improper application; (2) defended R&L in the underlying lawsuit, which may have included requesting declaratory relief as to whether it had a duty to defend or indemnify; and (3) limited its exposure and not been subject to a $2.8 million default judgment.

"The burden should be on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts[.]"  *Macias*, 475 So. 2d at 1218.  Gemini argues that by the time it filed suit against R&L in January of 2011, repairs to the vessel were nearly complete.  Therefore, it claims, Mesa would not have been in a better position had it received notice in January of 2011, as opposed to November of 2011.  This argument misses the mark.  First, the policy required notice of an "occurrence . . . which may result in a claim." Therefore, R&L should have notified Mesa in February of 2010, when Gemini

8

began contacting R&L about problems with the paint coating. Second, late notice will often place an insurer at a disadvantage with regard to inspections. As Mr. Leonard pointed out, had Mesa been timely notified about the problem with the paint coating, it could have retained an expert to determine whether the coating had been improperly applied, what caused the improper application, and the amount of damage caused by the improper application. The fact that Mesa was notified after the repairs were complete does not rebut the presumption of prejudice; it bolsters Mesa's claim of prejudice.

In support of its argument that the issue of prejudice should have been submitted to a jury, Gemini relies on deposition testimony by Mr. Leonard. When asked why Mesa did not appoint counsel upon learning of the default judgment against R&L, Mr. Leonard explained that, after reviewing the complaint and the policy language and investigating the situation, he determined the policies did not cover Gemini's claim.

Gemini's argument boils down to the proposition that an insurer cannot be prejudiced by late notice if it would have denied the claim even if notice had been timely. As Mesa seeing thing, Mr. Leonard's testimony—that Mesa concluded there was no coverage based on the complaint and the policy language—rebuts the presumption of prejudice. We reject Gemini's argument. First, Mr. Leonard did

9

not testify that Mesa would have denied Gemini's claim even if notice had been timely. If he had, perhaps that would have raised an issue of fact sufficient to survive summary judgment. Second, an insurer which ultimately denies a claim based on lack of coverage may nevertheless be prejudiced due to late notice.

We find the district court's sound reasoning in *National Casualty Co. v. Floyd County Board of Commissioners*, NA No. 01-182-C-H/K, 2002 WL 31045373, *4 (S.D. Ind. Aug. 29, 2002) persuasive. Under the indemnity policy at issue in *National Casualty*, the county board owed National Casualty prompt notice of certain policy-triggering events. Indiana law, like Florida law, provides that delayed notice raises a presumption that the insurer was prejudiced. *Compare Miller v. Dilts*, 463 N.E.2d 257, 261 (Ind. 1984), *with Macias*, 475 So. 2d at 1218. The board moved for summary judgment, arguing that National Casualty was not prejudiced by the delayed notice. It based its argument on the same theory Gemini advances here: that National Casualty was not prejudiced by the delayed notice because it would have denied the claim even if notice had been timely. The district court in *National Casualty* explained, correctly, we believe, that accepting the board's argument "would effectively nullify a notice defense any time that an insurer raised any other defense to claims asserting a duty of coverage or duty to defend." *National Casualty*, 2002 WL 31045373, at *4. The district court continued: "Even if an insurer believes it has other grounds for denying coverage .

10

. . it is entitled to timely notice [so it can have an] opportunity to make an early evaluation of its risks and to decide how to proceed." *Id.*  We conclude that under Gemini's theory an insurer could never claim late notice as a defense unless it was the sole basis for denying coverage.  And Florida law does not support such a theory.  *See Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, No. 11-80272-CIV, 2012 WL 3848569, *8 (S.D. Fla. Sept. 5, 2012) (rejecting an argument that where an insurer denies a claim on grounds other than late notice, it waives the right to deny coverage based on late notice).

The purpose of a notice requirement is to allow the insured to investigate the claims against it and evaluate its rights and liabilities.  *Waldrep*, 400 So. at 785.  That purpose is frustrated where, as here, notice occurs *seven months after default judgment* was entered against the insured.  Mesa was deprived of a meaningful opportunity to defend itself, avoid litigation, mitigate the costs of litigation, negotiate a settlement, or avoid default judgment.  In short, R&L's failure to notify Mesa raised a presumption of prejudice as to Mesa which Gemini failed to rebut.  Thus, summary judgment in favor of Mesa was proper.

**B**

Gemini next argues that, even if it failed to rebut the presumption of prejudice, summary judgment in favor of Mesa was still improper because Mesa

11

waived the late notice defense by failing to inform R&L that it would rely on that particular defense. We find this argument unpersuasive.

The relevant portion of § 627.426(2)(a) reads as follows:

(2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:

(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery[.]

The record reflects that Mesa received notice on November 18, 2001. Three days later, Mesa sent R&L a reservation of rights letter, which was also hand delivered to Mr. Nguyen, R&L's owner and president, on December 4, 2011. The letter indicated that the policy was subject to certain terms and conditions, including the "duties in the event of occurrence" provision. The letter quoted the policy language relevant to the "duties" provision, which required R&L to notify Mesa of an "occurrence . . . which may result in a claim . . . as soon as practicable." The letter also stated: "We have cited these [provisions] to provide specific references to portions of the policy, without waiver of any part of the policy."

12

Under Florida law, "[i]t is settled that an insurer may provide a defense to its insured while reserving the right to challenge coverage if timely notice of such reservation is given to the insured." *Centennial Ins. Co. v. Tom Gustafson Indus., Inc.*, 401 So. 2d 1143, 1144 (Fla. 4th DCA 1981). And the failure to timely report a claim is a "classic coverage defense [that] must be [included] in the reservation of rights letter." *Mid-Continent Cas. Co. v. King*, 552 F. Supp. 2d 1309, 1317 (N.D. Fla. 2008).

As the district court here pointed out, Mesa's letter was not general or "boilerplate," as Gemini suggests. Rather, Mesa directed R&L's attention to particular provisions—including the "duties in the event of occurrence" provision—it deemed applicable under the circumstances. Given the contents of the reservations of rights letter, Mesa complied with the requirements of § 627.426(2)(a) and did not waive the late notice defense.

### III

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Mesa.

**AFFIRMED.**